TAM:EP:mz

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:01-CR-321 |
| | ) | |
| v. | ) | (Judge Kane) |
| | ) | |
| ANTHONY ALSTON | ) | (Electronically filed) |

### GOVERNMENT'S BRIEF IN RESPONSE TO
### DEFENDANT'S MOTION TO SUPPRESS

AND NOW comes the United States of America, by its attorneys, Thomas A. Marino, United States Attorney for the Middle District of Pennsylvania, and Eric Pfisterer, Assistant United States Attorney for the same district, and files its Brief in Response to Defendant's Motion to Suppress, by stating as follows:

**I.    BACKGROUND**

It is undisputed that Detective James McBride of the York City Police Department had probable cause to believe that a drug vending operation was being conducted at 456 Lincoln Street in York, Pennsylvania on September 7, 2000. In fact, on September 8, 2000, Detective McBride executed a search warrant at 456 Lincoln Street and recovered a large quantity of cocaine. Based on the results of that search, Detective McBride sought a search warrant for 1210 West King Street, York, Pennsylvania. The affidavit for the search warrant provided as follows:

The undersigned is Det. James McBride, who is presently assigned to the Vice and Narcotics Division of the York City Police Depart. Based on the following information I believe that there is probable cause to believe that a drug vending and/or operation is being conducted from [1210 W. King Street]. On 9-8-00 at approx. 0935 Hrs officer executed a search warrant at 456 Lincoln St. 1st Fl. And recovered a large quantity of cocaine. Among the cocaine was papers to Anthony Alston of 1210 W. King St. Officers talked to Zulieka Woodard of 456 Lincoln St. 1st Fl. And learned that her boyfriend Anthony Alston stays overnight from time to time and lives at 1210 W. King St. 2nd Fl. She advised that the cocaine found in her apartment was Anthony Alston's. The quantity of cocaine recovered was several ounces yet there was only a small amount of cash. Woodard advised that Alston stays overnight and then returned to his apartment of 1210 W. King St. Due to the size of this operation in my experience there should be more cash involved and probable cause to believe that Anthony Alston would store more quantity of cocaine and cash at his apartment. A criminal history check of Anthony Alston showed that he has a prior record for possession with intent to deliver controlled substance. Ms. Woodard advised that Alston drives a light colored 1990 Honda Pa. Reg# CCB-2812 to get from W. King St. To Lincoln St. And back.

On that same day, the warrant was approved by a magistrate and was executed. A firearm was recovered in that search and is the subject of defendant's motion to suppress.

**II.   ISSUE**

Whether the totality of the circumstances revealed in the search warrant affidavit provided probable cause to search the defendant's residence.[1]

---

[1] It is the Government's position that no hearing is necessary in this matter since as a matter of law the Court must decide the issue based on the four corners

### III. ARGUMENT

In challenging the magistrate's probable cause finding in this matter, the defendant faces an exacting burden of proof. It is now well-established a magistrate's probable cause finding is subject to a "deferential standard of review." Massachusetts v. Upton, 466 U.S. 727, 733 (1984). Such deference is appropriate in order to "further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Id.

Applying this deferential standard, courts are cautioned to avoid a de novo review of this magistrate's probable cause finding. Id. At 732-33. Instead, the role of a reviewing court is simply to determine "whether the evidence viewed as a whole provided a 'substantial basis' for the magistrate's finding of probable cause." Id.

Moreover, when considering affidavits, like this one, which are based on a cooperator's information, reviewing courts must avoid applying any rigid, mechanical tests to this probable cause determination. See Illinois v. Gates, 462 U.S. 213, 225-38 (1983). Instead, the reviewing court must consider the totality of the circumstances presented in a search warrant affidavit, and viewing those

---

of the affidavit. (See United States v. Whitner, 219 F.3d 289, 292 (3d Cir. 2000). Clearly, the defense would object to the Government calling witnesses to supplement or add to the probable cause.

circumstances in a common-sense fashion, determine whether probable cause exists. Id. At 230-31. As the Supreme Court observed:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Id. At 238.

In this case, the magistrate correctly concluded that there was probable cause to believe that there may be more drugs and cash at the defendant's own apartment. This conclusion is supported by the affidavit and the inferences that can logically be drawn from it. The magistrate's determination is supported by the following logical conclusions and inferences: first, it is an undisputed fact that a drug vending operation existed at 456 Lincoln Street, where a significant quantity of cocaine was seized; second, that the defendant was involved in this drug operation based on the statements of Ms. Woodard and the recovery of personal papers of the defendant from 456 Lincoln Street; third, that the defendant, while engaged in this drug vending operation, resided at 1210 West King Street, based again on Ms. Woodard's statement and corroborated by the defendant's personal

papers with the 1210 West King Street address on them seized from 456 Lincoln Street; fourth, that based on Detective McBride's training and experience, there should be more cash associated with an operation of this size and that the defendant would store both money and additional quantities of cocaine at his residence.[2] This inference is also supported by Ms. Woodard's statement that the defendant would stay over at her apartment and then return to 1210 West King Street.

Detective McBride's conclusion is supported by case law as well. In Whitner, the Third Circuit Court of Appeals stated:

> In the case of drug dealers, a number of other courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside. See United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999) (It reasonably could be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there.), cert. denied, ___ U.S. ___, 120 S. Ct. 942, 145 L.Ed.2d 819 (2000); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . . *and . . . in the case of drug dealers evidence is likely to be found where the dealers live.*") (quoting United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir. 1996) (internal quotations and citations omitted)), cert. denied, 526 U.S. 1125, 119 S. Ct. 1781, 143 L.Ed.2d 809 (1999); United States v.

---

[2] Defendant notes in his brief that the York County Court of Common Pleas found that the affidavit lacked probable cause; however, this decision is not controlling in any way, specifically as it was made without reference to federal case law and without regard for the good faith exception to the exclusionary rule.

> Henson, 123 F.3d 1226, 1239 (9th Cir. 1997) (*"In the case of drug dealers, evidence is likely to be found where the dealers live."*) (internal quotation omitted); United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994) (observations of drug trafficking occurring away from dealer's residence along with officer's statement in affidavit that drug dealers often store evidence in their residences provided probable cause for search of dealer's house); United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (per curiam) (observations of drug trafficking occurring away from dealer's residence can provide probable cause for search of dealer's house); United States v. Williams, 974 F.2d 480, 482 (4th Cir. 1992) (per curiam) (affidavit establishing that known drug dealer was residing in a motel room established sufficient probable cause to search motel room for drug paraphernalia); United States v. Davidson, 936 F.2d 856, 859-60 (6th Cir. 1991) (evidence of pattern of defendant's involvement in drug-dealing established probable cause to search defendant's residence although there was no direct evidence of drug dealing occurring at the residence); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); United States v. Cruz, 785 F.2d 399, 406 (2d Cir. 1986) (probable cause established for search of drug dealer's apartment although defendant was not seen using the apartment.)

Whitner, 297-298.

It is clear from Whitner that simply because there was no direct evidence that drugs were at 1210 West King Street (e.g., Ms. Woodard saying that she had seen drugs there) does not end the examination concerning whether probable cause to believe that drugs are there exists. As the defendant's girlfriend, Ms. Woodard clearly had a basis for her knowledge of the defendant's activities. If you credit her statement, then it is fair to conclude that the defendant was a significant drug

dealer who when not selling drugs from 456 Lincoln Street was living at 1210 West King Street where common sense would dictate that he would probably keep drug proceeds and drugs as well.

In any event, even if this Court concluded that the magistrate erred, suppression of this evidence would be inappropriate. It is undisputed that the searching agents acted in good faith on September 8, 2000, with the reasonable belief that their search was authorized by a valid warrant. As a legal matter, the exclusionary rule simply does not apply to the fruits of a search conducted in good faith on the basis of a warrant reasonably believed to be valid. United States v. Leon, 468 U.S. 897 (1984); United States v. Bishop, 890 F.2d 212, 216-18 (10th Cir. 1989).

    Respectfully submitted,

    THOMAS A. MARINO
    United States Attorney

    /s/ Eric Pfisterer
    ERIC PFISTERER
    Assistant United States Attorney
    228 Walnut Street, Suite 220
    P.O. Box 11754
    Harrisburg, Pennsylvania  17108
    Attorney I.D. No. PA738492
    (717) 221-4482
    (717) 221-4582 (Facsimile)
    ERIC.PFISTERER@USDOJ.GOV

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO. 1:01-CR-321** |
| | ) | |
| v. | ) | (Judge Kane) |
| | ) | |
| **ANTHONY ALSTON** | ) | (Electronically filed) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 30th day of November 2005, she served a copy of the attached

**MOTION TO CONTINUE SUPPRESSION HEARING**

by electronic means by sending a copy to each of the e-mail addresses stated below:

Addressee:

Lori Ulrich, Esquire
*pamd-fpd.hbg@verizon.net*

/s/ Mary Zerance

Mary Zerance
Legal Assistant