**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal No. 1:01-CR-321** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **ANTHONY ALSTON,** | : | |
| | : | |
| **Defendant** | : | |

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court is Defendant's motion to suppress the seizure of a handgun recovered during a police search of his apartment in York, Pennsylvania. The Government has filed a timely brief opposing the motion, and the Court convened an evidentiary hearing on January 24, 2006. Upon due consideration of the briefs and the evidence submitted, the Court concludes that the seizure of the handgun must be suppressed because it was recovered pursuant to a search warrant issued without probable cause, and because the good faith exception to the exclusionary rule does not apply.

**I.      Background**

In September 2000, Detective James McBride of the Vice and Narcotics Division of the York City Police Department was investigating reports from a confidential informant that a "drug vending operation" was being conducted out of the first floor apartment at 456 Lincoln Street in York, Pennsylvania. On September 5, 2000, Detective McBride picked up the trash placed in the alley to the rear of 456 Lincoln Street. In this trash pull, Detective McBride recovered, among other things, approximately 12 sandwich baggies that had been cut up in a method consistent with packaging controlled substances, and marijuana stems that field tested positive. (Govt. Ex. 1.) On September 7, 2000, Detective McBride again pulled the trash behind 456 Lincoln Street and recovered a marijuana joint, a marijuana stem, and a bill and a note

addressed to Zulieka Woodward of 456 Lincoln Street.  (Id.)  Additionally, Detective McBride

found one sandwich baggie that had been cut up with the corners missing.  (Id.)  On the basis of

the foregoing information, on September 7, 2000, Detective McBride applied for and obtained a

warrant to search the first floor apartment at 456 Lincoln Street to search for the following items:

> Marijuana, a Schedule I controlled substance along with any other
> drugs and/or paraphernalia, packageing [sic] materials, scales,
> business records and other documentary and physical items
> relating to the possession, distribution and sale of narcotic and
> dangerous drugs, also any person there to prevent the concealment
> or destruction of evidence.

(Id.)

On September 8, 2000, Detective McBride, accompanied by six other law enforcement

officers, executed the warrant to search the first floor apartment at 456 Lincoln Street.  This

search yielded, inter alia, approximately $600 in cash, a scale, a quantity of cocaine,[1] loose

marijuana and a marijuana "blunt" cigarette, several papers addressed to Anthony Alston, and a

photograph of Zulieka Woodard and Anthony Alston.  (Id.)

Immediately following this search, Detective McBride applied for a second search

warrant, this time to search Anthony Alston's apartment at 1210 West King Street, York,

Pennsylvania.  In support of this second application, Detective McBride submitted a very brief

affidavit, set forth in its entirety below:

> The undersigned is Det. James McBride, who is presently assigned
> to the Vice and Narcotics Division of the York City Police Dept.
> Based on the following information I believe that there is probable
> cause to believe that a drug vending and/or storage operation is

---

[1]     The copy of the inventory report related to this search is very difficult to read and,
in some cases, is illegible.  It does not appear that the inventory report calculates or
approximates the total amount of cocaine recovered during the search.

being conducted from the [1210 West King Street] apartment.  On
9-8-00 at approx. 0935hrs officer executed a search warrant at 456
Lincoln St. 1st Fl. and recovered a large quantity of cocaine,
[illegible], cash and paraphernalia, also marijuana.  Field tested
positive for marijuana and cocaine.  Among the cocaine was [sic]
papers to Anthony Alston of 1210 W. King St.  Officers talked to
Zulieka Woodard of 456 Lincoln St. 1st Fl. and learned that her
boyfriend Anthony Alston stays over night from time to time and
lives at 1210 W. King St. 2nd Fl.  She advised that the cocaine
found in her apartment was Anthony Alston's.  The quanity [sic]
of cocaine recovered was several ounces yet there was only a
small amount of cash.  Woodard advised that Alston stays over
night and then returns to his apartment of 1210 W. King St.  Due
to the size of this operation in my experience there should be
more cash involved and probable cause to believe that Anthony
Alston would store more quanity [sic] of cocaine and cash at his
apartment.  A criminal history check of Anthony Alston showed that
he has a prior record for possession with intent to deliver controlled
substance.  Ms. Woodard advised that [Alston] drives a light colored
1990 Honda PA Reg # CCB-2812 to get from W. King St. to Lincoln St.
and back.

(Govt. Ex. 2.)

On the basis of the foregoing affidavit, a magistrate issued the requested warrant.  On

September 8, 2000, Detective McBride and three other law enforcement officers searched

Defendant's apartment less than 2 ½ hours after the search of 456 Lincoln Street.  The search of

Defendant's apartment yielded, inter alia, a loaded .380 semi-automatic handgun and

ammunition.

## II.    Procedural History

On September 8, 2000, Defendant was charged in the Court of Common Pleas of York

County with possession with the intent to deliver cocaine, criminal conspiracy to possess cocaine

with the intent to deliver, and unlawful possession of a firearm.  Following a suppression hearing

held January 29, 2001, the Court of Common Pleas upheld the search of 456 Lincoln Street, but

found the search warrant for 1210 West King Street lacked probable cause and therefore

suppressed the seizure of the firearm from Anthony Alston's apartment.  Following a jury trial

held in July 2001, Defendant was found guilty of possession with intent to deliver cocaine and

conspiracy with intent to deliver cocaine.  Defendant was permitted to remain free on bail

pending sentencing, and thereafter failed to appear.

On October 10, 2001, Defendant was indicted in federal court for possession of a firearm

by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  On October 4, 2005, Defendant was

arraigned before Magistrate Judge J. Andrew Smyser, and pled not guilty to the charge.[2]  On

November 21, 2005, Defendant moved to suppress the seizure of the .380 handgun recovered

during the search of 1210 West King Street.  The Government filed a timely brief in opposition

to the motion.  On January 24, 2006, the Court held an evidentiary hearing on the motion during

which Detective McBride testified.

## II.    Discussion

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and
> seizures, shall not be violated, and no Warrants shall issue,
> but upon probable cause, supported by Oath or affirmation,
> and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.  "One's home is sacrosanct, and unreasonable government intrusion into

the home is 'the chief evil against which the wording of the Fourth Amendment is directed'."

---

[2]    The nearly four-year delay in arraigning Defendant was due to the fact that
Defendant had remained a fugitive since failing to appear for sentencing in September 2001.

United States v. Zimmerman, 277 F.3d 426, 431 (3d Cir. 2002) (quoting Payton v. New York,

445 U.S. 573, 585 (1980)).  The Fourth Amendment prohibits a general warrant.  Zimmerman,

277 F.3d at 432 (citation omitted).   The standard governing a reviewing court's determination of

whether there was sufficient probable cause to support issuance of a search warrant is set forth in

Illinois v. Gates, 462 U.S. 213 (1983):

> The task of the issuing magistrate is simply to make a practical
> commonsense decision whether, given all the circumstances
> set forth in the affidavit before him . . . there is a fair probability
> that contraband or evidence of a crime will be found in a particular
> place.  And the duty of a reviewing court is simply to ensure that
> the magistrate had substantial basis for . . . concluding that
> probable cause existed.

Id. at 238-39.  The warrant must also describe the things to be seized with sufficient particularity

and be no broader than the probable cause on which it is based.  Id. (citing United States v.

Weber, 923 F.2d 1338, 1342 (9th Cir. 1991)).

    A district court exercises only "deferential review" over a magistrate's initial probable

cause determination.  Gates, 462 U.S. at 236.  The Court will uphold a magistrate's finding of

probable cause if the affidavit upon which the search warrant is based provided a substantial

basis for finding probable cause.  Hodge, 246 F.3d 301, 305 (3d Cir. 2001); United States v.

Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).  "The resolution of doubtful or marginal cases in this

area should be largely determined by the preference to be accorded to warrants."  Jones, 994

F.2d 1051, 1057-58 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).  However,

although reviewing courts ordinarily defer to a magistrate's initial finding in favor of a warrant,

this "does not mean that reviewing courts should simply rubber stamp a magistrate's

conclusions."  Zimmerman, 277 F.3d at 433 (quoting United States v. Tehfe, 722 F.2d 1114,

Case 1:01-cr-00321-YK    Document 31    Filed 02/08/2006    Page 6 of 21


1117 (3d Cir. 1984)).

### A.    Probable Cause

Defendant argues that the affidavit offered in support of the warrant to search 1210 West King Street failed to provide the magistrate with a sufficient legal basis to believe that evidence of a crime would be found in the apartment.  Essentially, Defendant contends that Detective McBride sought permission to search Defendant's apartment based on an unverified hunch rather than probable cause.  The Court agrees with Defendant that the September 8, 2005 warrant application, including all reasonable inferences that could be drawn from Detective McBride's limited affidavit, lacked sufficient indicia that officers were likely to find contraband or evidence of a crime in Defendant's apartment.  Accordingly, the Court must find that the issuing magistrate lacked a substantial basis for concluding that probable cause existed to support the search.

Before examining the search warrant application relating to 1210 West King Street, the Court first considers the initial search warrant and search of Zulieka Woodard's apartment at 456 Lincoln Street, as this search lead to Detective McBride's application for a warrant to search the Defendant's apartment.[3]  In the affidavit supporting the search of Ms. Woodard's apartment, Detective McBride attested to the drug evidence recovered during two trash pulls, and about information provided by a confidential informant of suspected drug trafficking activity out of the apartment.  This evidence and information related exclusively to the 456 Lincoln Street location.

After executing the search warrant, Detective McBride's suspicions of drug trafficking

---

[3]    The validity of this search warrant was upheld by the Court of Common Pleas and is not subject to a challenge before this Court.

activity out of the apartment were confirmed, with the search yielding a quantity of cocaine, drug paraphernalia, packaging materials, and approximately $600 in cash, among other items. On the basis of this search, Zulieka Woodard was criminally charged with possession with intent to distribute a controlled substance.[4]

On the basis of information and evidence obtained from a search of Ms. Woodard's apartment, Detective McBride believed that further evidence of drug trafficking activity was likely to be found at Anthony Alston's apartment. From the limited information contained in the warrant application, it appears that Detective McBride reached this conclusion on the basis of the following information: (1) Zulieka Woodard's uncorroborated allegation that the cocaine discovered in her apartment belonged to her boyfriend, Anthony Alston; (2) papers addressed to Anthony Alston having been found during the search of Ms. Woodard's apartment; (3) Detective McBride's own opinion that because he had recovered "several" ounces of cocaine and "only a small amount of cash," there "should [have been] more cash involved" with what appeared to be a large drug trafficking operation at 456 Lincoln Street; and (4) the discovery that Anthony Alston had a prior

---

[4]       Detective McBride did not indicate in the subsequent application to search Defendant's apartment that Ms. Woodward was charged with a crime as the result of this search, nor did he indicate that Ms. Woodard was suspected of involvement in a crime. During his testimony before the Court on January 24, 2006, Detective McBride acknowledged that Zulieka Woodard was charged with possession with intent to distribute following the recovery of narcotics, packaging materials, and paraphernalia from her apartment. (Tr. 19.)

conviction of possession with intent to distribute.[5]

As reflected in Detective McBride's affidavit, the information provided by Ms. Woodard was both limited in nature, and in important respects, entirely uncorroborated. After the police had recovered what Detective McBride described as a substantial quantity of cocaine from her apartment, which would lead to her being charged with possession with intent to distribute, Ms. Woodard claimed that the drugs belonged to her boyfriend, Anthony Alston. Nothing in the affidavit suggests that Ms. Woodard's allegation was corroborated meaningfully or otherwise investigated. Instead, Detective McBride appears to have immediately accepted Ms. Woodard's allegation, based on evidence recovered during the first search suggesting that Alston was Woodard's boyfriend and because police discovered papers addressed to Mr. Alston that were found during the search of Woodard's apartment, as well as the fact that Mr. Alston had a prior record for drug trafficking. Taking into account these limited pieces of information, the Court does not find that Detective McBride's affidavit provided the magistrate with information that made it reasonably probable that evidence of narcotics trafficking, including cash or drugs, would be found in Mr. Alston's apartment. At most, the affidavit demonstrates that a drug

---

[5]     During the January 24, 2006 evidentiary hearing, Detective McBride testified that a confidential informant advised him that a "black male" was suspected of drug trafficking out of the 456 Lincoln Street apartment. (Tr. 15.) Detective McBride also testified that he "suspected it was Alston." (Id.) Additionally, Detective McBride testified that he had personally witnessed Defendant's car at Ms. Woodard's apartment. (Id. 16.) The application in support of the search warrant for 456 Lincoln Street does not contain any of this information, nor does the subsequent affidavit in support of the warrant application to search 1210 West King Street. The Court is aware that a reviewing court "should focus not on what information an affidavit does not include [which may lead to improper de novo review], but rather on the information it does contain." United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001) (quoting United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1993)). However, the Court highlights the absence of the information in either affidavit to illustrate that the issuing magistrate could not have considered such information in deciding whether probable cause existed to issue the warrants.

trafficking operation was being conducted out of Ms. Woodard's apartment and gave rise to suspicions that Alston might be involved. The affidavit, however, contains nothing to support an inference that Mr. Alston was involved in drug trafficking other than Ms. Woodard's self-serving allegation that the drugs did not belong to her, but to Alston.

Additionally, the Court does not find that Detective McBride's uncorroborated suspicion that more narcotics or drug-related cash was likely to be found at Defendant's apartment supported issuance of the warrant. As he had no direct evidence of any criminal activity having occurred at Defendant's apartment, Detective McBride's suspicion was based on Ms. Woodard's uncorroborated claim that the seized cocaine belonged to Anthony Alston, Detective McBride's belief that there should have been more than the approximately $600 in cash recovered from Ms. Woodard's apartment given what he believed to be a significant drug operation being conducted in the apartment, and the fact that Defendant had a criminal record relating to narcotics.

The Court finds that the foregoing information was so limited that it could not have provided the issuing magistrate with a substantial basis for believing evidence of a crime would be found in Defendant's apartment. The affidavit indicates that officers discovered a drug dealing operation existing at 456 Lincoln Street as evidenced by a seizure of drugs, cash, packaging materials, and paraphernalia. However, with the exception of Detective McBride's belief that more cash should have been found given the amount of cocaine seized, the affidavit offered in support of the warrant provides no basis from which to conclude that Defendant's apartment would contain evidence of a crime other than Woodard's bare allegation that the cocaine belonged to Defendant and that he was her boyfriend.

The Government maintains that the affidavit was legally sufficient and provided the

magistrate with a substantial basis to conclude that evidence of drug trafficking would be found at Defendant's apartment.  In support of its claim that Detective McBride's affidavit was legally sufficient to support issuance of a warrant to search Defendant's apartment, the Government relies principally on United States v. Whitner, 219 F.3d 289 (3d Cir. 2000) and cases cited therein.  As discussed below, the Court finds the facts of Whitner and the cited cases to be easily distinguished from those of the instant case.

In Whitner, an officer with the Drug Enforcement Agency ("DEA") received information from the Arizona State Narcotics Task Force that a suspicious package was being mailed from Tucson, Arizona to a Linda Liggins in Pittsburgh, Pennsylvania.  219 F.3d at 292.  Officers obtained a warrant to search the package, discovered that it contained 5.75 pounds of methamphetamine, and placed a beeper on the package.  Id.  Shortly after the package was delivered, the beeper indicated that the package might have been opened and agents entered Ms. Liggins's residence.  Id.  Upon entering the residence, agents encountered Ms. Liggins and a man identified as James Whitner clad in only his underwear.  Agents detained Liggins but later released her.  Id.  However, they arrested Whitner, advised him of his Miranda rights, and questioned him.  Id.

Based upon information provided by Liggins and Whitner, the investigating DEA agent drafted a substantial and detailed affidavit in support of an application for a warrant to search Whitner's Monroeville apartment.  Id.  The affidavit contained, inter alia, the following information: (1) a controlled delivery of 5.75 pounds of methamphetamine to Ms. Liggins's apartment resulted in the arrest of Whitner; (2) Ms. Liggins advised officers that Whitner was awaiting delivery of a package and that he provided her with specific details as to how the

10

package was to be shipped and that it would be shipped in his name; (3) Whitner consented to a

search of his automobile, during which agents discovered 9 mm and .45 caliber handgun

ammunition; (4) Whitner advised officers that he lived with his mother, which conflicted with

information Liggins supplied that Whitner lived in an apartment in Monroeville, Pennsylvania;

(5) agents investigated and determined that Whitner maintained an apartment in Monroeville, as

Ms. Liggins asserted; and (6) after being confronted with information regarding this apartment,

Whitner told officers to contact a known drug dealer who "could explain things". Id. at 292-295.

Based upon Whitner's arrest for receipt of the 5.75 pounds of methamphetamine, together with

all of the information set forth in the investigating agent's affidavit, a magistrate judge

determined there was probable cause to believe there was contraband at Whitner's Monroeville

apartment.  Agents executed the warrant and recovered a significant quantity of drugs and cash,

among other items.

    The district court suppressed the search, but the United States Court of Appeals for the

Third Circuit reversed.  The Court first noted the fact that the affidavit revealed that Whitner had

actually been arrested in connection with delivery of the methamphetamine, stating that "the fact

that probable cause to arrest has been established increases the probability that the defendant is

storing evidence of that crime in the defendant's residence." Id. at 297.  The Third Circuit also

followed the decisions from a number of other circuits holding that "evidence of involvement in

the drug trade is likely to be found where the dealers reside." Id.  The Court explained:

> The rationale underlying the foregoing line of cases is that evidence
> associated with drug dealing needs to be stored somewhere, and that
> a dealer will have the opportunity to conceal it in his home.  After all,
> a dealer logically could conclude that his residence is the best, and
> probably the only, location to store items such as records of illicit
> activity, phone books, address books, large amounts of cash, assets

> purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold.
>
> Rivotti's affidavit stated that Whitner had been arrested as a result of a controlled delivery of 5.75 pounds of methamphetamine. It is reasonable to infer from the delivery of such a large quantity of drugs that the individual arrested as a result of the seizure is involved in selling drugs, rather than merely using them. In addition, it is reasonable to infer from the fact that such a large delivery was entrusted to Whitner and that he had arranged a specific drop off point, that he was familiar with drug transactions. In addition, the agents found ammunition in Whitner's car and he told them that he was in some way associated with a known dealer . . . . Viewed in a commonsense manner, these facts and the inferences to be drawn from them reasonably could lead a magistrate judge to conclude that Whitner was involved in the drug trade.

Id. at 298. Notably, the Court did not uphold the warrant solely on the basis that Whitner appeared to be a drug dealer.[6] Instead, the Court also relied upon the fact that Whitner had been deceptive when questioned about his Monroeville apartment, and that he had referred officers to a convicted drug dealer in response to questioning. The Court found that "[t]his attempt at concealment when combined with the other information Rivotti set forth in his affidavit logically suggests that Whitner was storing some evidence of illegal activity at the apartment which he did not want the agents to discover." Id. at 299. Accordingly, although the Third Circuit "acknowledge[d] that it would have been preferable if Rivotti could have supplied more information linking the premises to be searched to the criminal activity," the Court concluded that the affidavit provided the issuing magistrate with a substantial basis to believe that evidence of a crime would be found at Whitner's apartment. Id.

---

[6] Specifically, the Court avoided deciding whether such an appearance was sufficient: "we need not decide whether the fact that Whitner appears to be a drug dealer is sufficient under the circumstances of this case to conclude that he would be likely to store evidence of his drug dealing at his residence." Whitner, 219 F.3d at 298.

There are manifest distinctions between the substantial information and evidence regarding Whitner's drug activities, and the limited information connecting Defendant to the drug operation discovered at 456 Lincoln Street.  Unlike <u>Whitner</u>, nothing in Detective McBride's affidavit indicates that Defendant was arrested immediately following the search of Ms. Woodard's apartment.  Furthermore, Detective McBride did not attest that he or other officers interviewed Defendant after the search, nor that Defendant at any time provided suspicious or deceptive answers or statements, nor that officers found guns or ammunition or other contraband belonging to Alston.  Thus, three of the primary pieces of evidence the Third Circuit relied upon in upholding the search warrant in <u>Whitner</u> – the arrest, discovery of ammunition, and suspicious or deceptive statements – are absent in the instant case.

Furthermore, the cases cited in <u>Whitner</u> for the proposition that it is lawful to authorize the search of a suspect's home in the absence of direct evidence of criminal activity occurring at or in the home are easily distinguished from the case at bar because each of these involved direct and substantial evidence that the defendant had been engaged in drug activity.  A review of these cases is instructive.

In <u>United States v. Feliz</u>, 182 F.3d 82 (1st Cir. 1999), the court held that it could reasonably be supposed that a drug dealer stored evidence of dealing at his home, although no trafficking was observed to occur there.  <u>Id.</u> at 87-88.  In <u>Feliz</u>, however, the investigating agents had been working with a confidential informant who identified the defendant and made a number of controlled purchases of narcotics from him.  <u>Id.</u> at 83-84.  Accordingly, although the agents did not have direct evidence of criminal activity in defendant's home, they had substantial direct evidence of his drug trafficking activities.

Similarly, in United States v. McClellan, 165 F.3d 535 (7th Cir. 1999), the Seventh Circuit upheld a warrant authorizing the search of defendant's home where the affiant attested to information obtained from a confidential informant about the defendant's drug trafficking and the fact that the defendant had recently been arrested in possession of 210 pounds of marijuana. Id. at 540. The court found this evidence sufficient to provide the magistrate with a substantial basis to find that defendant was trafficking in narcotics, and to believe that additional evidence of a crime would be found in defendant's home.

In United States v. Henson, 123 F.3d 1226 (9th Cir. 1997), the Ninth Circuit upheld a warrant authorizing the search of defendant's home after agents observed the defendant involved in the sale of PCP to a confidential informant. The Court noted that direct evidence of contraband at a particular location is not essential to establish probable cause, and that specifically "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." Id. at 1238-1239. As with the cases discussed above, however, the issuing magistrate was actually presented with an affidavit attesting to the defendant's known drug trafficking activities to support the search of defendant's home.

In United States v. Luloff, 15 F.3d 763 (8th Cir. 1994), the court upheld a warrant authorizing the search of defendant's home where the affidavit offered in support of the warrant attested to defendant's long-term drug trafficking, and included information taken from sworn affidavits given by defendant's confederates and from information obtained from confidential informants. On the basis of this information about the defendant's drug trafficking activity, together with the investigating agent's averment that drug traffickers tend to keep indicia of their drug dealing within their residences, the court found the warrant to search defendant's home was

properly issued.  As before, in <u>Luloff</u>, the investigating agents provided the issuing magistrate

with substantial information regarding the defendant's drug trafficking activities to support a

search of defendant's home.

In <u>United States v. Thomas</u>, 989 F.2d 1252, 1255 (D.C. Cir. 1993), the court upheld a

warrant authorizing the search of a defendant's home issued upon an affidavit in which an

undercover officer attested to the following: (1) a reliable informant's tip that defendant had

recently been selling cocaine and heroin; (2) within 72 hours before applying for the warrant,

defendant sold three ziplock bags of cocaine to an undercover officer; and (3) conversations

between the defendant and the undercover officer regarding previous narcotics sales.  989 F.2d at

1253-1254.  In affirming the warrant's validity, the court held that "observations of illegal

activity occurring away from the suspect's residence, can support a finding of probable cause to

issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of

the illegal activity observed, that relevant evidence will be found in the residence."  <u>Id.</u> at 1255.

Clearly, the affidavit recounted specific examples of defendant's narcotics trafficking that

officers actually observed to support a search of defendant's home.[7]

Detective McBride's extremely brief and conclusory affidavit stands in sharp contrast to

the warrant applications upheld in the foregoing cases.  Detective McBride provided the issuing

---

[7]     <u>Whitner</u> also cites to the following cases in support of the proposition that direct
evidence of criminal activity is unnecessary to support a search of a suspect's home: <u>United
States v. Williams</u>, 974 F.2d 480, 482 (4th Cir. 1992); <u>United States v. Davidson</u>, 936 F.2d 856,
859-60 (6th Cir. 1991); <u>United States v. Angulo-Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986);
and <u>United States v. Cruz</u>, 785 F.2d 399, 406 (2d Cir. 1986).  The Court finds it unnecessary to
provide a summary of the facts relevant to each of the warrants upheld in these cases.  However,
as with the cases discussed in greater detail above, each of the cases involved a warrant that
authorized the search of a drug dealer's home or dwelling, and the affidavits offered in support
of the warrants each provided direct evidence of the defendants' drug trafficking activities.

magistrate with almost no evidence that Defendant was engaged in drug trafficking other than:
(1) the uncorroborated statement of Ms. Woodard who was herself criminally charged following
the search; (2) the fact that officers recovered papers addressed to Alston in the home they had
recently searched; and (3) the fact that Defendant had a criminal record for drug trafficking.
Such a showing places this case in a far different light from Whitner and the cases discussed
above, where the warrants were substantially predicated upon direct evidence or information that
the defendants were actively engaged in drug trafficking.

      Taken as a whole, the Court finds that Detective McBride's affidavit, together with all
reasonable inferences that can be taken therefrom, was not sufficient to provide the issuing
magistrate with a substantial basis to conclude that evidence of criminal activity was likely to be
found at Defendant's apartment.  Detective McBride and other officers had executed a search of
456 Lincoln Street and uncovered evidence of a drug trafficking operation located at that
residence, but the officers did not provide the magistrate with any substantial evidence that the
cocaine was, in fact, Defendant's, other than to offer Ms. Woodard's uncorroborated allegation.[8]
The Court does not find that the discovery of papers addressed to Defendant in Ms. Woodard's
apartment and Defendant's prior criminal record combined to provide a substantial basis to
believe that evidence of criminal activity would be found at Defendant's apartment.
Furthermore, Detective McBride presented no information or evidence that any criminal activity
had occurred at Defendant's home.  Accordingly, the Court finds that the warrant lacked
probable cause and the seizure of the handgun that resulted from the search must be suppressed

---

      [8]     During the evidentiary hearing, Detective McBride acknowledged that he did not
attempt to assess Ms. Woodard's credibility before seeking the warrant to search Defendant's
home.  (Tr. 19.)

unless a recognized exception to the exclusionary rule applies.

**B.    Good Faith Exception**

The Government argues that even if the warrant was constitutionally infirm, the seized handgun found at Defendant's apartment should not be suppressed because the good faith exception to the exclusionary rule applies.  The Court disagrees.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that evidence seized pursuant to a search warrant found to be unsupported by probable cause is, nevertheless, admissible if the evidence was obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge.  Id. at 922.  The Third Circuit has instructed that "[b]ecause law enforcement officers are not attorneys and . . . often must make hurried judgments, courts should not suppress probative evidence when a reasonable mistake has been made in obtaining a warrant."  United States v. Zimmerman, 277 F.3d 426, 436 (3d Cir. 2002).  "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'"  United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting Leon, 468 U.S. at 922, n.23).

The Supreme Court has instructed that "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search'."  Leon, 468 U.S. at 922 (quoting United States v. Ross, 456 U.S. 798, 823 n.32 (1982)).  However, "[w]hen the Supreme Court announced the good faith exception . . . it weakened the exclusionary rule, but it did not eviscerate it."  Zimmerman, 277 F.3d at 438-439.  The Third Circuit has held that there are situations where "an officer's reliance on a warrant would not be

reasonable and would not trigger the [good faith] exception." United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001). The Court has identified four such situations: (1) where the magistrate issued a warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. Id. (citation omitted). "If . . . just one [of the situations] is present, application of the good faith exception will not be triggered." Zimmerman, 277 F.3d at 437. Notably, the Third Circuit has provided that the good faith exception is limited somewhat where the affiant is one of the executing officers:

> particularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable.

Id. at 438.[9] "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." Id. at 439 (quoting United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996)).

Upon careful consideration, the Court finds that Detective McBride's affidavit in support

---

[9] It should also be noted that investigating officers cannot "rely on colleagues who are ignorant of the circumstances under which the warrant was obtained" to insulate the search from constitutional scrutiny. Leon, 468 U.S. at 923, n.24 (citing Whiteley v. Warden, 401 U.S. 560, 568 (1971)). Accordingly, the fact that Detective McBride executed the warrant with the assistance of other officers does not cleanse it or otherwise cause the good faith exception to save the tainted search.

of the application to search Defendant's apartment was so lacking in the requisite indicia of probable cause that it was entirely unreasonable for an officer to believe in its validity. Detective McBride sought permission to search Defendant's apartment based upon his intuition and the discovery of narcotics and other contraband in Ms. Woodard's home, after which she accused Defendant of owning the cocaine seized from her apartment. The affidavit, which appears to have been prepared less than 2 ½ hours after officers searched 456 Lincoln Street, contains nothing to corroborate Ms. Woodard's allegation, other than the fact that there was evidence that Defendant spent time in the apartment and was involved with Ms. Woodard.[10]

The Third Circuit has noted that "[t]he good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all known facts." Zimmerman, 277 F.3d at 439. On the limited information Detective McBride was able to include in the warrant, the Court cannot believe that he or any reasonably objective police officer could have believed that, despite the magistrate's authorization, the law did not prohibit a search of Alston's home for evidence of cash or drugs.

For all of the foregoing reasons, the Court finds that the seizure of the handgun recovered

---

[10]     Again, not only does the affidavit fail to offer any probative corroborating information or to attest to Ms. Woodard's credibility, but it omits the fact that Ms. Woodard had been arrested and faced criminal charges as a result of the search. Additionally, Detective McBride testified before this Court that he had information that a "black male" was selling drugs out of 456 Lincoln Street, but this information was not included in either warrant application, and thus the Court can only conclude that the magistrate could not have considered this information. The fact that Detective McBride may have been told, and subjectively believed, that his target was a black male does not revive the good faith exception, because that exception is as a matter of law predicated on the showing made in the affidavit: "When a police officer has 'not presented a colorable showing [of probable cause], and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of Leon does not apply.'" Zimmerman, 277 F.3d at 437 (quoting United States v. Hove, 848 F.2d 137, 140 (9th Cir. 1988)) (emphasis added).

during a search of Defendant's apartment must be suppressed.  An appropriate Order follows this

memorandum.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA,**          :
                                       :          **Criminal No. 1:01-CR-321**
**v.**                                 :
                                       :          **(Judge Kane)**
**ANTHONY ALSTON,**                    :
                                       :
          **Defendant**                :

## ORDER

And now, this 8th day of February 2006, for the reasons set forth in the within

memorandum, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Suppress (Doc. No.

19) is **GRANTED**.


                    _____S/ Yvette Kane_____
                    Yvette Kane
                    United States District Judge